## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THOMAS WALTER SOKOL,                    )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )
                                        )   Case No:
                                        )
EXPERIAN INFORMATION                    )
SOLUTIONS, INC., EQUIFAX                )   Judge:
INFORMATION SERVICES, LLC and           )
TRANS UNION LLC,                        )
                                        )
                    Defendants.         )

## VERIFIED COMPLAINT

Thomas Walter Sokol ("Plaintiff") brings this action on behalf of himself against defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax") and Trans Union LLC ("Trans Union") (collectively, "Defendants") as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action against Defendants for damages resulting from their violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA").

2.     "Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which

1

is essential to the continued functioning of the banking system." 15 U.S.C. § 1681(a)(1). "Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). "There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right of privacy." 15 U.S.C. § 1681(a)(4).

3.     Consumer reporting agencies are to "[…] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information …" 15 U.S.C. § 1681(b).

4.     Plaintiff is alleging that Defendants failed to conduct a reasonable investigation into an inaccurate mortgage payment history, including an erroneous 90-day late payment, an erroneous 120-day late payment and status of a mortgage account appearing on Plaintiff's credit report and continue to falsely report a late payment history which has caused damage to Plaintiff.

5.     Defendants have failed in their grave responsibilities of fairness, impartiality, and a respect for Plaintiff's right of privacy, which failures are causing damage to Plaintiff.

## JURISDICTION & VENUE

6.      Jurisdiction is proper under 28 U.S.C. § 1331, ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.") and 15 U.S.C. §1681p (FCRA) as this action arises under the laws of the United States.

7.      Venue is proper in this judicial district because Defendants engaged in the complained of acts in this district. 28 U.S.C. § 1391(b) ("A civil action may be brought in— (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ..."). Plaintiff resides in this district and a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

## PARTIES

8.      Plaintiff is a natural person who resides in Macomb County, Michigan.

9.      Plaintiff is also a consumer as defined by the FCRA, 15 U.S.C. §1681a(c): "an individual."

10.      Defendant Trans Union is a limited liability company with its principal place of business located in Chicago, Illinois. Trans Union's registered agent is CSC Lawyers Incorporating Service Company, located at 3410 Belle Freedom Way, Ste. 600, Lansing, MI 48911.

11.     Trans Union is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

12.     Defendant Experian is an Ohio corporation with its principal place of business located at 475 Anton Blvd., Costa Mesa, CA 92626. Its registered agent, The Corporation Company, is located at 40600 Ann Arbor Rd. E, Ste. 201, Plymouth, MI 48170.

13.     Experian is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

14.     Defendant Equifax is a limited liability company with its principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax's registered agent is CSC Lawyers Incorporating Service Company, located at 3410 Belle Chase Way, Ste. 600, Lansing, MI 48911.

15.     Equifax is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports

to third parties bearing on a consumer's credit worthiness, credit standing or credit capacity

16.    Defendants regularly conduct business in the state of Michigan.

## FACTS

**A.    Plaintiff's mortgage payments were paid through automatic bill pay.**

17.    In or around February 2020, Plaintiff took out a mortgage for a home loan with AmeriHome Mortgage Company, LLC ("AmeriHome").

18.    Plaintiff made his mortgage payments to AmeriHome by setting up automatic bill pay to withdraw the payments from his Credit Union One ("Credit One") bank account and transfer the funds to AmeriHome. Plaintiff made all of his mortgage payments to AmeriHome timely through automatic bill pay.

19.    On or around April 11, 2024, Plaintiff received a notification letter from AmeriHome that on May 1, 2024, the AmeriHome mortgage loan would be transferred to Freedom Mortgage Corporation ("Freedom") with account number 15460****.

20.    In or around April 2024, Plaintiff updated his Credit One account online to have his automatic mortgage payments be paid to the Freedom account under account number 15460****.

21.    Plaintiff checked his Credit One bank account regularly and saw that from May 7, 2024, to August 5, 2024, his monthly mortgage payments were being withdrawn from his Credit One bank account and being transferred to account number 15460****.

**B. Credit One's internal errors led to inaccurate and misleading reporting on Plaintiff's credit reports**

22.    In early September 2024, Plaintiff was contacted by Freedom by phone and mail. To Plaintiff's surprise, he was told on the phone by a Freedom representative that his account was past due and that Freedom had never received a mortgage payment from him. Plaintiff sent Freedom screenshots from his bank account showing that his monthly mortgage payments were automatically withdrawn and transferred to account 15460**** from May 2024 to August 2024.

23.    In late September 2024, Freedom contacted Plaintiff again stating that they could not find the payments and requested that Plaintiff forward copies of his bank statements and a letter from Credit One confirming the payments were made to Freedom. Plaintiff immediately forwarded copies of his bank statements. However, Freedom still could not locate the mortgage payments.

24.    On October 4, 2024, Credit One sent Plaintiff a letter confirming that his May 2024 through August 2024 monthly mortgage payments had been debited

6

from his Credit One account and transferred to account number 15460****. Plaintiff immediately forwarded this letter to Freedom.

25.    In early October 2024, Plaintiff contacted the company that processes automatic payments for Credit One. Plaintiff discovered that his mortgage payments had been misapplied to the original AmeriHome account. After discovering that his monthly mortgage payments had been sent to AmeriHome, Plaintiff immediately called AmeriHome to locate the missing mortgage payments. Plaintiff was told by the AmeriHome representative that they would investigate.

26.    On October 4, 2024, Plaintiff contacted AmeriHome again via email requesting to locate the missing payments. AmeriHome responded on the same day via email stating that it had located the mortgage payments. Plaintiff was told AmeriHome would have to reimburse Plaintiff the mortgage payments by mailing a check out to Plaintiff.

27.    AmeriHome had kept Plaintiff's monthly mortgage payments and never forwarded the payments to Freedom or notified Plaintiff that it had wrongfully received Plaintiff's monthly mortgage payments.

28.    In early October 2024, Plaintiff received a notification from his credit monitoring service that changes had been made on his credit reports and that his credit score had dropped. Plaintiff accessed his credit reports, and to his surprise,

found that Experian, Equifax and Trans Union were reporting the Freedom account payment history with a 90-day late payment in August 2024 and a 120-day late payment in September 2024 on his Experian, Equifax and Trans Union credit reports. Plaintiff immediately contacted Freedom to request that the late payments history be removed from his credit reports given the mortgage payments had been misapplied. Plaintiff was told that Freedom would investigate.

29.     On October 8, 2024, Plaintiff emailed AmeriHome and asked if it could correct the reporting on Plaintiff's credit reports. AmeriHome responded that Plaintiff would have to contact Freedom to request a credit report review.

30.     On November 18, 2024, Plaintiff contacted Freedom via email asking for an update on any corrections made to his credit report. Freedom responded via email the next day stating that the mortgage payments made May 2024 through July 2024 were protected by RESPA and not reporting late; however, Freedom's credit department confirmed that the August 2024 and September 2024 payments were accurately reporting as late payments.

31.     On November 19, 2024, Plaintiff contacted Credit One via email asking if it could help resolve the late payments reporting on his credit reports. Credit One responded the next day via email stating that it could not help the Plaintiff and

believed that the payments were sent incorrectly because an address was not properly updated in Credit One's internal system.

32.     Credit One's internal errors led to inaccurate and misleading reporting on Plaintiff's Experian, Equifax and Trans Union credit reports, making it seem to potential third party creditors that Plaintiff was late on his mortgage payments when in fact Plaintiff made every mortgage payment on time.

**C.  Plaintiff disputed the inaccurate and misleading information on his Experian, Equifax and Trans Union credit reports.**

33.     On March 18, 2025, Plaintiff accessed his credit reports and found that Experian, Equifax and Trans Union were reporting the Freedom account payment history with a 90-day late payment in August 2024 and a 120-day late payment in September 2024 on his Experian, Equifax and Trans Union credit reports.

34.     Plaintiff decided to pay a professional to help correct the growing financial issue that was caused by Experian, Equifax and Trans Union.

35.     On March 19, 2025, Plaintiff caused to be sent a properly addressed dispute letter via postal mail with sufficient postage to Experian stating that he had never been late on his mortgage payments and that the Freedom account was reporting incorrectly. Plaintiff requested Experian remove the 90 and 120-day late payment statuses reporting on his Freedom account in this dispute. Upon information and belief, Experian received Plaintiff's March 2025 dispute letter.

36.     On March 19, 2025, Plaintiff caused to be sent a properly addressed dispute letter via postal mail with sufficient postage to Trans Union stating that he had never been late on his mortgage payments and that the Freedom account was reporting incorrectly. Plaintiff requested Trans Union remove the 90 and 120-day late payment statuses reporting on his Freedom account in this dispute. Upon information and belief, Trans Union received Plaintiff's March 2025 dispute letter.

37.     On March 19, 2025, Plaintiff caused to be sent a properly addressed dispute letter via postal mail with sufficient postage to Equifax stating that he had never been late on his mortgage payments and that the Freedom account was reporting incorrectly. Plaintiff requested Equifax remove the 90 and 120-day late payment statuses reporting on his Freedom account in this dispute. Upon information and belief, Equifax received Plaintiff's March 2025 dispute letter.

38.     On April 23, 2025, Plaintiff accessed his credit reports again, and to Plaintiff's dismay, found that Experian, Equifax and Trans Union were still reporting the Freedom account payment history with a 90-day late payment in August 2024 and a 120-day late payment in September 2024 on his Experian, Equifax and Trans Union credit reports.

39.     On April 30, 2025, Plaintiff caused to be sent a properly addressed dispute letter via certified mail with sufficient postage to Experian stating that he

had never been late on his mortgage payments, that Credit One misapplied his mortgage payments and that the Freedom account was reporting incorrectly. Plaintiff included the letter from Credit One verifying payments were timely made to account 015460**** and the November 2024 email exchange with Credit One as proof thereof. Plaintiff requested Experian remove the 90 and 120-day late payment statuses reporting on the Freedom account in this dispute.

40.     On April 30, 2025, Plaintiff caused to be sent a properly addressed dispute letter via certified mail with sufficient postage to Trans Union stating that he had never been late on his mortgage payments, that Credit One misapplied his mortgage payments and that the Freedom account was reporting incorrectly. Plaintiff included the letter from Credit One verifying payments were timely made to account 015460**** and the November 2024 email exchange with Credit One as proof thereof. Plaintiff requested Trans Union remove the 90 and 120-day late payment statuses reporting on the Freedom account in this dispute.

41.     On April 30, 2025, Plaintiff caused to be sent a properly addressed dispute letter via certified mail with sufficient postage to Equifax stating that he had never been late on his mortgage payments, that Credit One misapplied his mortgage payments and that the Freedom account was reporting incorrectly. Plaintiff included the letter from Credit One verifying payments were timely made to account

015460**** and the November 2024 email exchange with Credit One as proof thereof. Plaintiff requested Equifax remove the 90 and 120-day late payment statuses reporting on the Freedom account in this dispute.

42.     On May 5, 2025, Defendant Experian received Plaintiff's certified dispute letter -USPS tracking number 9589-0710-5270-1615-1278-68.

43.     On May 5, 2025, Defendant Equifax received Plaintiff's certified dispute letter -USPS tracking number 9589-0710-5270-1615-1278-51.

44.     On May 7, 2025, Defendant Trans Union received Plaintiff's certified dispute letter -USPS tracking number 9589-0710-5270-1615-1278-75.

45.     On June 25, 2025, Plaintiff accessed his credit reports again, and to Plaintiff's dismay, found that Experian, Equifax and Trans Union were still reporting the Freedom account payment history with a 90-day late payment in August 2024 and a 120-day late payment in September 2024 on his Experian, Equifax and Trans Union credit reports.

46.     Plaintiff never received a response to his many dispute letters from Experian, Equifax or Trans Union.

47.     It is unclear if Experian, Equifax and Trans Union forwarded Plaintiff's dispute letters to Freedom as it is required to under the FCRA.

48.     Despite Plaintiff's lawful requests for removal of the erroneous and misleading information as to the Freedom account pursuant to the FCRA, Defendants failed to adequately investigate Plaintiff's disputes and failed to remove the disputed, derogatory, misleading and erroneous items from Plaintiff's credit report.

49.     Upon information and belief, Defendants failed to evaluate or consider any of Plaintiff's information, claims, or evidence, and did not make sufficient—if any—attempts to remove the disputed items within a reasonable time following Defendants' receipt of Plaintiff's disputes.

50.     The Defendants' actions have damaged Plaintiff financially. Plaintiff has suffered loss of financial independence and paid for a professional company to help him remove the erroneous reporting to his credit report. In addition, Defendants' violations of the FCRA have caused Plaintiff to suffer damage to reputation, humiliation, loss of self-esteem, emotional distress, frustration, mental anguish, anxiety.

51.     Multiple third-party potential creditors have reviewed Plaintiff's Experian, Equifax and Trans Union credit reports that contain erroneous information.

52.     Plaintiff has suffered damages proximately caused by the conduct of

Defendants, including:

    i.   Emotional distress, damage to reputation, humiliation, guilt, stress, anxiety, frustration, mental pain, anguish, distress, and loss of focus, and production;

    ii.   Time and expense of pulling/reviewing credit reports and sending a dispute letters to Defendants;

    iii.   Believing that the Freedom account may continue to be reported inaccurately and misleadingly through no fault of Plaintiff and have a chilling effect on his ability to obtain credit;

    iv.   Adverse information on Plaintiff's credit reports and a negative impact to Plaintiff's credit rating;

    v.   An inability to improve Plaintiff's credit score during the dispute process;

    vi.   Invasion of privacy;

    vii.   A lower credit score; and

    viii.   Having to hire attorneys to combat the improper credit reporting.

### Count I – Trans Union
### Violations of FCRA §§ 1681e(b) and 1681i

53.     Plaintiff incorporates the preceding Paragraphs as though fully set

forth herein.

54.     A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

55.     Trans Union is a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

56.     Pursuant to 15 U.S.C. § 1681i(a)(1)(A), if a consumer disputes any item of information contained in his or her credit report, a consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…before the end of the 30-day period beginning on the date on which the agency receives notice of the dispute from the consumer."

57.     Pursuant to 15 U.S.C. § 1681i(a)(4) Defendant Trans Union must "review and consider all relevant information submitted by the consumer" when it conducts any reinvestigation requested by a consumer.

58.     Here, Plaintiff sent a dispute letter to Trans Union showing that the Freedom account should not have a payment history that included 90 and 120-day

late payments and included proof thereof. Plaintiff's dispute letter requested that Trans Union correct the erroneous information on his credit report.

59.   Defendant Trans Union failed to conduct a reasonable investigation of the inaccurate payment history and account status reporting in Plaintiff's credit file about the Freedom account after receiving actual notice of the inaccuracies.

60.   Defendant Trans Union violated 15 U.S.C. § 1681e(b) by its conduct, acts, and omissions in failing to establish or to follow reasonable procedures to assure maximum possible accuracy of information concerning Plaintiff in the preparation and publication of Plaintiff's consumer reports.

61.   Defendant Trans Union violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions, including, but not limited to, the following:

    a.   failing to (i) conduct a reasonable reinvestigation of Plaintiff's dispute concerning all items of information Plaintiff disputed, and (ii) record the correct statuses of the disputed information or delete the disputed information from Plaintiff's credit file, in violation of § 1681i(a)(1);

    b.   failing to delete the erroneous items from Plaintiff's credit file within the 30-day period of receiving Plaintiff's disputes, in violation of § 1681i(a)(1);

    c.   failing to provide Plaintiff's disputes to the companies that provided the information to Trans Union within 5 business days, in violation of § 1681i(a)(2);

    d.  failing to review and consider all relevant information submitted by Plaintiff concerning Plaintiff's disputes, in violation of § 1681i(a)(4); and

    e.  failing to properly delete items of disputed information from Plaintiff's credit file that Trans Union could not have verified upon a lawful reinvestigation in violation of § 1681i(a)(5).

62.  These violations of §§ 1681e(b) and 1681i were willful, rendering Defendant Trans Union liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

63.  In the alternative, Defendant Trans Union's violations of §§ 1681e(b) and 1681i were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

64.  Plaintiff has suffered loss of financial independence, anguish, embarrassment, humiliation, frustration, reputational damage, and emotional distress because of Trans Union's failure to fully and properly investigate Plaintiff's disputes.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a.  Enter judgment in Plaintiff's favor and against Defendant Trans Union;
    b.  Appropriate statutory penalties for each violation of the FCRA;
    c.  Actual damages;
    d.  Punitive damages;

    e.  Reasonable attorney's fees and the costs of this litigation;

    f.  Pre-judgment and post-judgment interest at the legal rate;

    g.  Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's tradelines; and

    h.  Such other relief as the Court deems equitable, just, and proper.

### Count II – Experian
### Violations of FCRA §§ 1681e(b) and 1681i

65.    Plaintiff incorporates the preceding Paragraphs as though fully set forth herein.

66.    A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

67.    Experian is a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

68.    Pursuant to 15 U.S.C. § 1681i(a)(1)(A), if a consumer disputes any item of information contained in his or her credit report, a consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information,

18

or delete the item from the file…before the end of the 30-day period beginning on the date on which the agency receives notice of the dispute from the consumer."

69.     Pursuant to 15 U.S.C. § 1681i(a)(4) Defendant Experian must "review and consider all relevant information submitted by the consumer" when it conducts any reinvestigation requested by a consumer.

70.     Here, Plaintiff sent a dispute letter to Experian showing that the Freedom account should not have a payment history that included 90 and 120-day late payments and included proof thereof. Plaintiff's dispute letter requested that Experian correct the erroneous information on his credit report.

71.     Defendant Experian failed to conduct a reasonable investigation of the inaccurate payment history and account status reporting in Plaintiff's credit file about the Freedom account after receiving actual notice of the inaccuracies.

72.     Defendant Experian violated 15 U.S.C. § 1681e(b) by its conduct, acts, and omissions in failing to establish or to follow reasonable procedures to assure maximum possible accuracy of information concerning Plaintiff in the preparation and publication of Plaintiff's consumer reports.

73.     Defendant Experian violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions, including, but not limited to, the following:

        a.  failing to (i) conduct a reasonable reinvestigation of Plaintiff's dispute concerning all items of information Plaintiff disputed, and

(ii) record the correct statuses of the disputed information or delete the disputed information from Plaintiff's credit file, in violation of § 1681i(a)(1);

b. failing to delete the erroneous items from Plaintiff's credit file within the 30-day period of receiving Plaintiff's disputes, in violation of § 1681i(a)(1);

c. failing to provide Plaintiff's disputes to the companies that provided the information to Experian within 5 business days, in violation of § 1681i(a)(2);

d. failing to review and consider all relevant information submitted by Plaintiff concerning Plaintiff's disputes, in violation of § 1681i(a)(4); and

e. failing to properly delete items of disputed information from Plaintiff's credit file that Experian could not have verified upon a lawful reinvestigation in violation of § 1681i(a)(5).

74.     These violations of §§ 1681e(b) and 1681i were willful, rendering Defendant Experian liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

75.     In the alternative, Defendant Experian's violations of §§ 1681e(b) and 1681i were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

76.     Plaintiff has suffered loss of financial independence, anguish, embarrassment, humiliation, frustration, reputational damage, and emotional

distress because of Experian's failure to fully and properly investigate Plaintiff's disputes.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a. Enter judgment in Plaintiff's favor and against Defendant Experian;
    b. Appropriate statutory penalties for each violation of the FCRA;
    c. Actual damages;
    d. Punitive damages;
    e. Reasonable attorney's fees and the costs of this litigation;
    f. Pre-judgment and post-judgment interest at the legal rate;
    g. Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's tradelines; and
    h. Such other relief as the Court deems equitable, just, and proper.

### Count III – Equifax
### Violations of FCRA §§ 1681e(b) and 1681i

77.    Plaintiff incorporates the preceding Paragraphs as though fully set forth herein.

78.    A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

79.     Equifax is a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

80.     Pursuant to 15 U.S.C. § 1681i(a)(1)(A), if a consumer disputes any item of information contained in his or her credit report, a consumer reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…before the end of the 30-day period beginning on the date on which the agency receives notice of the dispute from the consumer."

81.     Pursuant to 15 U.S.C. § 1681i(a)(4) Defendant Equifax must "review and consider all relevant information submitted by the consumer" when it conducts any reinvestigation requested by a consumer.

82.     Here, Plaintiff sent a dispute letter to Equifax showing that the Freedom account should not have a payment history that included 90 and 120-day late payments and included proof thereof. Plaintiff's dispute letter requested that Equifax correct the erroneous information on his credit report.

83.     Defendant Equifax failed to conduct a reasonable investigation of the inaccurate payment history and account status reporting in Plaintiff's credit file about the Freedom account after receiving actual notice of the inaccuracies.

22

84.     Defendant Equifax violated 15 U.S.C. § 1681e(b) by its conduct, acts, and omissions in failing to establish or to follow reasonable procedures to assure maximum possible accuracy of information concerning Plaintiff in the preparation and publication of Plaintiff's consumer reports.

85.     Defendant Equifax violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions,including, but not limited to, the following:

   a. failing to (i) conduct a reasonable reinvestigation of Plaintiff's dispute concerning all items of information Plaintiff disputed, and (ii) record the correct statuses of the disputed information or delete the disputed information from Plaintiff's credit file, in violation of § 1681i(a)(1);

   b. failing to delete the erroneous items from Plaintiff's credit file within the 30-day period of receiving Plaintiff's disputes, in violation of § 1681i(a)(1);

   c. failing to provide Plaintiff's disputes to the companies that provided the information to Equifax within 5 business days, in violation of § 1681i(a)(2);

   d. failing to review and consider all relevant information submitted by Plaintiff concerning Plaintiff's disputes, in violation of § 1681i(a)(4); and

   e. failing to properly delete items of disputed information from Plaintiff's credit file that Equifax could not have verified upon a lawful reinvestigation in violation of § 1681i(a)(5).

86.     These violations of §§ 1681e(b) and 1681i were willful, rendering Defendant Equifax liable for statutory damages, actual damages, costs and

reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

87.    In the alternative, Defendant Equifax's violations of §§ 1681e(b) and 1681i were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

88.    Plaintiff has suffered loss of financial independence, anguish, embarrassment, humiliation, frustration, reputational damage, and emotional distress because of Equifax's failure to fully and properly investigate Plaintiff's disputes.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a.  Enter judgment in Plaintiff's favor and against Defendant Equifax;
    b.  Appropriate statutory penalties for each violation of the FCRA;
    c.  Actual damages;
    d.  Punitive damages;
    e.  Reasonable attorney's fees and the costs of this litigation;
    f.  Pre-judgment and post-judgment interest at the legal rate;
    g.  Appropriate equitable relief, including the correction or deletion of the inaccurate or misleading reporting of Plaintiff's tradelines; and
    h.  Such other relief as the Court deems equitable, just, and proper.

**JURY**

**Plaintiff demands a trial by jury on all issues so triable pursuant to Fed. R.**

**Civ. P. 38**

Dated: July 25, 2025                    Respectfully submitted,

/s/ *James M. Smith___*

James M. Smith
Doherty Smith, LLC
7000 W. 127th Street
Palos Heights, IL 60462
Phone: 312-319-2879
jsmith@dohertysmith.com
*Attorney for Plaintiff*

25

## __VERIFICATION__

Plaintiff Thomas Walter Sokol declares as follows:

1.    I am the Plaintiff in this Verified Complaint.

2.    I reside in Michigan.

3.    I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4.    I verify and affirm under penalty of perjury under the laws of the United States of America and the State of Michigan that the factual averments in this Verified Complaint concerning myself and my activities are true and correct pursuant to 28 U.S.C. § 1746.


Executed on: _7/25/2025_____


*Thomas W Sokol*
IDLFSyo5hw3cq5WiKPrmKKpJOU2O
/s/ Thomas Walter Sokol, Plaintiff

26